The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Cavanaugh presiding. Good morning. We'll first call 4-22-1074, People of the State of Illinois, versus McKeel Reed, Appellant. Counsel for the Appellant, would you please state your name for the record? Thank you, Your Honor. Good morning. My name is Nick Burris, B-U-R-R-I-S, on behalf of the Appellant, McKeel Reed. Thank you. And Counsel for the Appellee? Thank you, Your Honor. Good morning. Alison Paige Brooks, on behalf of the People. Thank you. Mr. Burris, you may proceed. Thank you, Your Honors, and again, good morning. Again, my name is Nick Burris, and I'm here on behalf of McKeel Reed to argue about why he's not guilty of first-degree murder, why his conviction cannot stand, why Your Honor should find him not guilty, and if you would disagree with that, why justice demands that he receive a new trial. Your Honors, this case was about accountability. It was always about accountability because the state made it about accountability. They charged it that way. They didn't charge him with knowing or intentional murder or even attempt robbery, just a single count accusing him of felony murder because he was accountable for the underlying attempt robbery. They proceeded to trial on that single charge, but then at trial, they didn't argue or offer any evidence that McKeel was a part of a robbery plan at all. They just reminded the jury that their witness, their cooperating witness, Talia Zolikoff, who I'm about to get into, claimed he fired the shot and focused on arguing that McKeel was present on the scene. Ultimately, Your Honors, the jury rejected Talia's story about McKeel shooting Terrence. They all signed a special verdict form, and I understand the court district precedent. We appended the Supreme Court case to our reply brief, and I can get into that, but I just want to get into the facts first. They all signed a special verdict form indicating that they all agreed he did not shoot Terrence, but then they still found him guilty, accountable for the felony murder. But Your Honors, there's no evidence supporting that in this record, and the state only argued that he was guilty because Talia said he shot and killed Terrence Dunnigan, not because he participated in the robbery scheme of charge, the only charge of robbery. So, counsel, good morning. If I can stop you there, you touched on a subject I wanted to talk about a little bit this morning, and that is the jury's finding that the defendant did not personally discharge this firearm. I believe in your reply brief you do argue that that finding should prevent us from affirming the judgment here, but do you not agree that case law does establish that the jury's finding with respect to the sentencing enhancement has no bearing on whether the evidence was sufficient to sustain this conviction? So really that particular finding in essence is irrelevant, is it not? Judge, I think there's a split here. So I don't think the court is barred from finding anything based upon that, but I do believe the court can give it weight, the weight of what the jury considered when it heard the evidence, because that's what the Supreme Court did in the case that we appended to our reply brief. That's exactly what they did. They considered the argument that was raised that the special interrogatory had a negative finding, and they ultimately determined on a double jeopardy argument that he could be retried because there was an alternative theory as to his guilt, but it didn't reject that special interrogatory outright and say we can't consider this at all. It did give it weight and credit that it happened. So I would ask that this court recognize that the Supreme Court in that case did give it credit for what it was worth, for the weight that it had. I'm not saying the court is bound by the decision, but I believe that it shows what the jury thought about the evidence in the case. Well, wasn't that argument abandoned at the Supreme Court? It was made in the fourth district, but I thought it really was abandoned by the appellant in the Supreme Court, so I'm not sure what the import of the Supreme Court's holding in that case would be on that point. I think the most important import, Judge, and also I do want to argue that Talia's testimony is just not credible about the shooting. I'm not just trying to say the court can't consider that, and that's why McKeel is not guilty. McKeel is not guilty because he didn't do this, and there's no evidence here to show that he did. I am just adding to the equation that the jury, all 12 of them, signed a verdict for him saying they did not believe Talia Zollicoffer when he said he shot Terrence, and that's something that should be given some credit. I understand that there's prior case law that talks about jury lenity, but I can't understand how in this circumstance that would be what happened. They're finding someone guilty of first-degree murder. They have no idea what the sentence is. They're not doing anything other than not signing what they believe is just an additional finding having to do with the case. It is, as a matter of fact, a factual finding. I understand the fourth district did not find that in previous cases, but they're hearing the evidence, and they're all agreeing as a consensus, and all signing the form saying we do not believe this was proven beyond a reasonable doubt, and I think that's pretty strong evidence that they did not believe it was proven beyond a reasonable doubt, and I'm not asking the court to find that as a matter of law. It's barred from considering any fact, but I would ask the court to consider that the jury heard the evidence firsthand, and they rejected that finding, and I think that's important. Thank you. A key witness here was Zollicoffer and certainly the testimony that he gave at trial. Certainly you point out the flaws in his testimony, various biases he had, certainly the deal that he had made for himself, but the jury did credit his testimony. So aren't you essentially asking us to put ourselves in the position of the jury and judging credibility here? We can't do that. No, Judge, I'm not asking you to put yourself in the place of the jury and judge credibility, but I am asking the court ultimately to find that when you review the record and review his testimony as a whole, taken in light of all the other evidence the state presented, that it's not credible. It can't be believed. And when you look at this verdict that is essentially split, the only claim here was that he shot Terrence. There's no other evidence about him at all. There's a conversation with him about a car where Talia says he's asked what he's doing. He says nothing. He's sitting in the front seat. They don't talk about a robbery. They don't talk about a dice game. They don't talk about a firearm. There's absolutely nothing there that shows he knew anything about anything. And then they go over to the house and he makes a claim about a shooting. And there's all sorts of reasons why we shouldn't believe his claim about the shooting. His own testimony is rife with just admissions about where that information came from. And it's blatant. It's not just suggestions. He's saying over and over again he's admitting that the information was fed to him, that essentially it just was not true, and that he is just outwardly testifying that he is only saying this because he was told he would face 40 years in prison if he did not. He's asked if he'd asked the police if they wanted him to say that McKeel was the trigger man, if they told him McKeel was the only other person there. So, Judge, I do believe as a matter of law his testimony cannot be taken credibly. And I think when you look at all the other issues in this case, it explains how they came to that conclusion without evidence. So I'm not asking the court to re-review their assessment of Talia Zolikoff. I believe they rejected his testimony regarding McKeel shooting Terrence. They looked at the evidence as a whole, found that he was present, and then found that he was accountable to this underlying attempt robbery despite there being no evidence. That's possibly because, Your Honors, the state played a video of the victim's mother lying on the ground in a parking lot, having absolutely nothing to do with the case, breathing, screaming, crying, and yelling to the heavens to bring her son back. It was absurdly irrelevant. Putting this video aside for a moment and assuming that if this court were to reverse that, certainly that wouldn't be played in the future. Didn't the evidence here, counsel, support the conclusion that the defendant himself sent a message to Zolikoffer shortly before the shooting telling him that he and Patterson were in the woodlands? And so if he did that, doesn't that in and of itself support the inference, at least, that the defendant was aware of the communication between Patterson and Zolikoffer, where Zolikoffer texted and asked Patterson to bring a gun, and it was defendant who drove there. So it drove Patterson there. So it definitely would support that inference, would it not? A few things, Judge, and I want to address them in turn. I don't believe the evidence shows he sent that text message. Talia Zolikoffer was asked who texted him when they arrived, and he testified that Keon did. They asked him the same question again, and he said it was Keon. So the only evidence here is that Keon Patterson sent that text message. Keon Patterson, who was found not guilty at trial, at a bench trial, with the transcripts from our trial. He's the person who's supposedly in the doorway in a pushing match with Terrence Dunnigan. He's found not guilty in a bench trial. And Talia said, indisputably, unimpeached, unaddressed at all, that that message, the only message about arriving, was sent by Keon. And that would make sense because the entire conversation was between Talia and Keon. Talia didn't know McKeel. McKeel didn't know Talia. They didn't know each other, anything beyond complete strangers. They had no idea who each other were. And I think the state even concedes that in their brief that that message, it said that the message sent, saying they arrived, was sent by Keon. It then talks about a message with a URL coming from a phone, coming from a Facebook account that has his name in it. But the only testimony here is that that message was sent by Keon Patterson, not by McKeel Reed, Judge. Beyond that, Judge, even if the court wants to believe that the jury could have considered he sent that message, and I understand the court's question, it doesn't show he knows anything. It shows that he arrived. I think the analogy we use in our brief was it's like an Uber alert. It just says he's there. It doesn't say he knows why he's there. It doesn't offer any evidence suggesting he knows why he's there. And if you look at all of the evidence taken together as a whole, I think what it does show is that Keon Patterson's phone had a malfunction, so he used McKeel's phone to send that message. Even if he told McKeel to send that message, there's no evidence here that shows he told him why or anything like that. There's no evidence that McKeel and Keon have ever spoken a word to one another in this record. There's not one. I understand they're in a car together, and the court can infer that they probably talked. I get that. But there's no evidence here as to what they talk about anything. And more importantly, Your Honors, there's no evidence Talia told Keon he was going to do a robbery. He testified that he decided to do a robbery while he was at the game, not that it was preplanned. Now, I would argue that his whole story is made up, frankly, and I think his testimony makes that obvious. But giving it the credit that it's worth for being part of the record, Your Honors, he testified that he decided to rob this dice game because he was losing, that he texted Keon Patterson to bring him a gun. He didn't say, I told Keon there was going to be a robbery, I told Keon anything about that, or we had a prior plan, or Keon knew what was up when I told him I wanted the gun. Nothing like that at all. And then Keon shows up, and he goes out to the car, and he doesn't talk about a robbery, he doesn't talk about anything, he doesn't see a gun. It's like this whole plan he had in his head just went to the wayside. So when you're looking at that, Your Honor, you're looking at those messages, I don't think they show any intent or knowledge at all, even if the court does assume, contrary to the testimony, that he did send that message. Well, if we're looking at this Facebook message in the URL, certainly if the state authenticated this queso queso message as being authored by the defendant, then certainly it would fit an exception to hearsay. And any hearsay argument you made in your briefs that queso queso message wasn't authenticated really would not be appropriate. But here, I understand and heard what you just recited with respect to the evidence, but we do know from the evidence that the author of this queso queso message claimed to be, as we said earlier, in the Woodlands apartment complex with Keon. And before the shooting, we know that Zollicoffer did exchange messages with Patterson. We also know that Patterson said in a message that he was with McHale. We know that Zollicoffer testified that he went out and met defendant and Patterson before this shooting, and that both defendant and Patterson went up to the apartment, tried to enter, and then after the shooting, both fled the scene and got into the car or a car that was registered to the defendant's aunt. So certainly all of this is strong circumstantial evidence that would authenticate this defendant as being the author of the queso queso message. Isn't that correct? Judge, I don't believe so, to be honest with you. And first and foremost, the court clearly found that that URL was hearsay. It didn't admit it substantively. And I understand the court's talking about authentication here, but there's no evidence here in this record that that account belongs to McHale. The state argued it in their closing argument. We objected. They kept arguing it. The court sustained the objection, and they kept arguing. But it's not evidence in this record. The court found it was hearsay. It said it was letting it in for some other purpose to allow it to get to the next part of that evidence. But it did not allow in the substance of that URL to include his name into evidence. So I think the buck kind of stops there. But beyond that, I don't think his presence on scene establishes that he sent the message at all. It establishes that he's unseen. It establishes that he's present unseen. The fact that he ran up to the house or ran away from the house or walked up to the house, excuse me, and ran away from the house after there was a shot fired, I don't think shows that he sent a message at all. I understand the court saying there's a message sent and then a person appears. I get the court's point, but I don't think it shows that he sent that message in the context where the other person who was there is the person who we have direct evidence about sending that message. So while it could possibly be inferred based upon all the circumstances that he was present and must have sent the message, we have direct evidence to the contrary saying that it came from Keon. Okay, let's move on. We don't have too much time left. And let's talk about, if we can, for a couple minutes, some of the evidentiary issues that you brought up. Most importantly, I think the jury instruction issue. Here we know that the committee comments to IPI 7.01, which is the felony murder instruction, expressly tell us that the jury should be instructed with IPI 6.05, which is the definitional instruction for attempt. Do you think I'm a little confused by your argument in your brief and your footnote? Why do you believe it was error for the court to instruct the jury with 6.05? There was no issues instruction given here with respect to attempt. What wasn't done is there was no instruction with regard to robbery. But why is there any problem with what the court did with respect to attempt? I don't want to confuse the issue with that footnote. And I think we may have with that brief principle with the jury instruction. It's simply that the jury was not told what robbery is. They were not given additional instruction. And I understand that essentially boils down to, do people know what robbery is at all? In general, is that something we commonly understand? And I understand that jurors know it's about stealing or taking something. But I think the question we have to ask is, is it every person in society who's not a lawyer, who's not a judge, who has not worked in the system, who has not been exposed to the crimes that would exclude them from jury service? Do they know that a robbery is the use of force to take property from another? And when you look at the evidence in this case, look at the conclusions they came to, it begs the question of whether they actually knew that. Because there's very little evidence of it. They go into the house. No one announces a robbery. No one points a gun at anybody. No one brandishes a weapon. No one shows any show of force whatsoever. No one says anything other than Keon's coming in to play dice. And then Terrence pushes Keon. Doesn't say, no one says anyone pushed Terrence. And then he fell down and got shot. So there's really no evidence here that anyone showed there was going to be a robbery at all. So I think it's really important that there was no robbery instruction in this case where what robbery is was really important. If someone runs up to somebody and puts a gun in their face and takes their money, maybe the instruction is less important. But in this case, where the question of is this a robbery at all, it is important. And I don't think. Right. But aside from the word importance, we're looking at this under the umbrella rubric of plain error. And I think Edwards tells us this is not second prong plain error. In Edwards, I believe first prong really wasn't an issue there. But in this case, I believe it is. I mean, why isn't the evidence here closely balanced? Entitling this defendant. I mean, how was the evidence closely balanced? You are arguing there was no evidence, but at the very least, it was closely balanced, was it not? Judge, I would argue that it was not closely balanced, that it was based solely off the testimony of Talia Zolicoffer, which was completely unbelievable. And then on top of that, we have an inflammatory video, inflammatory arguments, an array of illegal evidence. And it leads them to coming to a conclusion that is not supported by the evidence in the record. It's only offered by Talia. And then there's an entire fleet of information thrown at the jury that should not have been. They don't believe him about what he said. And then at the end of the day, they find them guilty of something that no one accused him of doing at all. They split the baby because, frankly, Your Honor, they were confused about what they were trying to find. And I think that is important because not just important because it affected the outcome of what happened. It changed what they decided. I didn't want to keep going past my time. Okay, counsel, you will have time in butthole, although are there any other questions? Not at this time. Thank you. Ms. Brooks. Thank you, Your Honor. May it please the court and counsel. With respect to whether the evidence was closely balanced. The Zala coffers testimony was corroborated, at least in significant parts by the phone of the phone record evidence, as well as the surveillance videos from the parking lots. So the actual shooting was not on the video, but. I mean, also the fact that the defendant's aunt's car was pictured on the scene. So there's the defendant fleeing to Georgia afterwards. And being arrested there, so there's a lot of extra evidence here and there's no real, like, countervailing testimony to whether the defendant was or not the shooter. So, Zella coffers testimony, it's not like there was a competing line of of witnesses who said that someone else was a shooter and blamed a certain particular identified person as another suspect of the shooter. And then it was up to the jury to determine whether you know which side to believe without the benefit of extrinsic evidence to resolve that conflict. That would be the case where a case would be close to balance, but this is not like that at all. So, the evidence of whether the defendant was actually at the scene with Keon Patterson and Tony Zola coffer heading to the site of a high stakes dice game with a gun. That that doesn't seem to be anything less than very, very strongly weighted against the defendant. And is being at the scene enough. However, I mean, didn't he need to know what was going to happen. Well, that's what the robbery. Yeah, I think that the fact that that the 1 of the other main pieces of onus to is that he's he's backing in on the surveillance video, which, which shows that he's aware that there's a robbery plan because he's got to get out of there. In fact, beats Zola coffers car out because he successfully backed in. And so he was able to just peel out straight out. And after the shooting, even though he was parked further away, there's all coffer. He made it out of the lot, like, a lot quicker. And that's because he, he took the extra time beforehand to prepare to back in to the parking spot, knowing that something was going to go down like this. So, the fact that they didn't successfully make it in side with the gun that there was this altercation in the doorway. The fact that the defendant was the shooter that that is according to the testimony. So, that is very strong circumstantial evidence that the defendant was in on the robbery plan because there's a high stakes dice game. And the message was saying, basically, to hurry up because the game, I guess, was about ready to end and they're afraid that everyone take their money and go before. Right back. So, that's 1 important thing is that they kind of had to hurry to get there in time. According to the messages, and so the fact that they're all heading there together, all 3 of them on the video. With the gun, trying to get into the dice game to get his money back. That is seems to be very powerful. Strikes me as a little odd that we are using the evidence that the defendant shot the fatal shot is evidence that he was in on the robbery. I don't know how often that's ever happened because usually that would mean the defendant would be charged with something other than felony murder would be charged directly with murder. It seems like the state's theory shifted from the pleadings to the to the trial. Can you address that? Well, what benefit of charging felony murder on accountability like this is they don't have to prove the mental state of the defendant here. So, I think that kind of eases the prosecution's burden in 1 respect. So, they do have to prove the accountability in the attempted robbery, but they don't have to then prove the defendant's mental state for being the shooter. Also, if there's a doubt as to whether it's a shooter, the defendant was a shooter. They also don't have to prove who the shooter was in an accountability situation. So, that's kind of important distinctions for why they prosecuted it this way. But in terms of the special interrogatory results, the Jones case shows that the defense protected from any possible juror rationality by being able to make this exact same argument that the evidence wasn't sufficient to convict. But that doesn't mean that somehow the jurors explicitly came back and said they didn't believe Talia. So, it doesn't seem like the fact that it could be a product of lenity doesn't mean that the jurors are somehow making any sort of explicit credibility determinations in terms of what their special interrogatory verdict answer was. So, this court should just do the same basic review of the sufficiency of evidence that would in any other case, even without the special interrogatory, which is irrelevant for this issue. Essentially, whether the record, which is viewed in light most favorable to the prosecution, is sufficient to prove the elements of the offense beyond a reasonable doubt. And in doing so, Cunningham is another case as well that's important in this sort of situation because it says when a conviction is based on testimony, testimony can only be found insufficient when the record compels the conclusion that basically no reasonable juror could believe the witness's testimony. And that's just not the situation here. The jurors knew that Talia Zollicoffer had incentive to cooperate because he's facing up to 40 years, for example. So, I mean, they could still believe him despite knowing that there's some issues with his testimony. But it's up to the juries who got the opportunity to see and hear the witness, not for the appellate court on the cold record to try to reassess witness credibility. So, essentially, the evidence would have to be insufficient as a matter of law to reverse on the grounds of evidentiary insufficiency. And that's just not the case with the situation here where the defendant is trying to attack the credibility of a prosecution witness, but it was up to the jury who saw and heard the witness to believe that witness or not. And they did find him guilty of a first degree murder. And so the evidence has to be reviewed in a light most favorable to the prosecution. I'm sorry. Doesn't there have to be some evidence that the defendant was part of at least a common criminal design? And here, I mean, are we saying, are you saying that what the defendant did to promote this robbery or participate in some way in it was backing into a parking space and then departing very quickly with Patterson after the shooting? Is that the evidence where you're relying on? Oh, there's more than just that. I mean, the fact that he did bring the key on who is the one that Tally wanted, who is like a little brother to him, but apparently needed a ride, I guess. So that's why the defendants bring in his aunt's car. So he's providing that. Plus, also, he's got the gun during the altercation and shoots. So, you know, providing not only the means to get there, he has the gun at the time of the shooting and he provides the means for getaway. So he he's also walking with Talia and Keon towards the scene of the dice game for the shooting happens. So they're all the inferences that they're all together. And the fact that he flees the scene, the fact that he was the shooter, all these are very strong pieces of circumstantial evidence to prove accountability. And so that's why it's not closely balanced in terms of whether the defendant was guilty or not. Any of the trial errors, you'd have to show that he was denied a fair trial and a second on the plane error or under the standards for cumulative error is. In terms of the lack of the definition of robbery, this is not a grave error. This is something it should know what a robbery is. And there's no risk that the jurors misunderstood the law and incorrectly convicted the defendant. In terms of the Facebook, I didn't quite understand why the defendant's name in a URL was an assertion that would qualify as actual hearsay. Hearsay is like an out-of-court assertion of fact, and there's no out-of-court assertion of fact in the fact that the in the defendant's name just being in a URL of a Facebook account. It even if he self-selected that, then that's a party opponent admission that that's his Facebook account. It's not like a phone number, though. A string of numbers doesn't make any assertion, but the name in it comes closer to making an assertion or making a statement, doesn't it? I mean, like a website, if it was www.osad.com, that's telling us something. Does the name in the URL tell us something? Well, it's not the type of thing that depends on the credibility of the declarant, essentially. It's like if a defendant signed her letter, and it was going to be admitted as a party opponent, and they denied it was their letter, even though it was signed by themselves. I mean, it seems like the signing their name to the letter is not an assertion of fact that would qualify under the hearsay rule. So the fact that this was sort of like a K-Sue, K-Sue Facebook account had a vanity URL with the defendant's name in it, he essentially signed his name to that account. That doesn't make the name itself hearsay. It doesn't have an actual out-of-court assertion of fact that would be subject to hearsay rule. And even in the authentication issues, it was authenticated circumstantially, and it met at least the bare minimum for authenticating it and being invisible. It would have had to have more than just the name per our second district case authored by Justice Michael Burke, People v. Kent, correct? I mean, that's clear in that case, that the mere fact that a Facebook account has somebody's name is not sufficient to authenticate the account. So you referred to some additional circumstantial evidence here that that was absolutely necessary for authentication, correct? Well, yes, the extra circumstantial evidence was the content of the message that came out of the account saying that him and Keon Patterson were in the woodlands and they're on a surveillance video and identified by Talia Zollicoffer as being in the woodlands. So I think that's sufficient circumstantial evidence to show that the defendant was in control of that account and that it was his statement. So it was properly admitted as party opponent admission. Can you help me understand what the trial court admitted it as? He had said it was permissible hearsay offered for some other purpose. What purpose did the trial court admit it for? I'm not sure exactly about that. I mean, essentially, if the defendant's identity as the owner of the Facebook account is, I'm not sure if that's like a non hearsay purpose or whatever. I mean, it's part of the authentication of the defendant as the author of the message that he and Patterson were in the woodlands complex. I mean, I'm not sure what sort of like hearsay or non hearsay purpose would be involved in. Like Kasey Kasey has a vanity URL. Why is that even relevant or important? Other than the fact that this is defendants admitting that he's in the woodlands with Keon Patterson and that corroborates Talia Zollicoffer's identification of who showed up in that car and right before the shooting. So, I mean, I mean, that's why it's important. But the actual vanity URL itself is not important. It just tends to identify the authentication of the author, authenticates the author of the message. That's the extent of my remarks. I would entertain any other questions. I did have one other question. I'd like to go back to the jury instruction issue and a comment you had made about the evidence not being closely balanced. You certainly agreed that the trial court should have given the definition of robbery as one of the instructions. And that certainly was error. But at page 10 of your brief, you seem to imply that to find the evidence was closely balanced that the defendants has to present evidence of his own. And that certainly isn't supported by any case law that I know of. Do you want to explain that? Or. I'm trying to find that real quick.  It's at page 10 and it's in the middle of the page, as I recall here. It says. Oh, Naylor. About two credible versions.  Therefore, you'd say defendant alleges that the evidence was closely balanced to our Facebook messages on Zalikoffer's phone and Woodland's apartment surveillance videos partially corroborated Zalikoffer's testimony. Therefore, this case is not like a closely balanced one where the defense's testimony and the prosecution's testimony created two credible versions of events with no additional evidence to contradict or corroborate either version of events. Defendant isn't required to produce any evidence. That's correct. They're not required to produce evidence. But in terms of what evidence the defense puts on or other evidence that's in the record that competes with the state's evidence is relevant to determine whether the evidence is closely balanced. It does not have to testify. But unlike Naylor, the defense had witnesses that testified to basically the exact opposite of the police testimony. And it was just a matter of resolving a conflict in their credibility. It's like a true swearing contest of sorts. I mean, I cite Naylor for essentially the gold standard of what constitutes a closely balanced case. Now, it doesn't have to be that extreme to be still closely balanced, but it certainly shows what sort of really, really helps to get there. Things that are just totally absent from this situation where there's not like a different credible version of events to compete with here, especially in a situation as well, where cases are closely balanced when there's not like an extrinsic. There's a lack of extrinsic evidence, you know, to sort of like corroborate or rebut either side's version. So that's kind of the two things that happens. You got a defense like has their own version of events and they have like nothing that would rebut that. No, no extrinsic evidence.  So that's why I think that's why I cited that case to sort of show the contrast between here's one case that was closely balanced. And here's why this case isn't even remotely close to that. Thank you. Okay. Thank you. Thanks for the questions, Justice Kavanaugh. Thank you, Your Honors. Thank you. Mr. Burrus, rebuttal. Thank you, Your Honor. For please the court, judge. I just want to address the same thing. Your honor. Just address the state. Is arguing that McKeon did not present evidence that he's not guilty of this crime. Your Honor pointed that out and they said he didn't have to testify, but he could have called his own witnesses. They just don't understand the fundamental concept. The court is very poor. Which is that he doesn't have to do anything. He doesn't represent anything. It's their burden to prove him guilty, and they fundamentally failed to do so. When they look at this record, and they look at all of this evidence, as Your Honor so astutely pointed out, all there is, is him backing into a parking spot. That is not evidence that he is guilty of a murder. Not evidence that he knew a murder was going to happen. It's not evidence of anything. Half the cars in the parking lot are backed into their parking spots. It's on video. Your Honors have it. They can see it. You can see it. Excuse me. They're all backed into the parking lot. Not all the cars, but there's a bunch of cars out there in the parking lot that are backed in. He gets away before Talia, because he's still outside. And he's standing behind Talia. He doesn't walk over to the house with Talia. It's on the video. The state keeps arguing he did. They played a video that showed that's not what happened, but they keep arguing that's what happened. He gets out of the car with Keon, 30 feet behind Talia. Talia is over at the house, going in the house. That's what Talia explained happened. I went inside. They stayed outside. And then Terrence gets shot in the doorway. He gets back to the car, because he's standing outside. That's why he leaves first. He runs away from a shooting, just like every 19-year-old kid would do. Just like everyone on scene did. Everyone out there scatters. Everyone who has nothing to do with this scatters. Terrence's best friend, who's on scene, scatters. He gets in his car and drives away. Never talks to the police, doesn't testify. Nothing like that. And the state's sitting here arguing that McKeel didn't offer evidence that he didn't do this. Because there's no evidence that he did. There's none. They don't even argue that Talia was credible. They don't even try to do that, because they know he wasn't. Everything he said was absurd. Everything he was impeached with was clear as day that he was not saying this. He's recorded saying the information he testified to was not true. That there was no robbery. That he did not delete a text message about a gun. He said, I will swear on my mama's ashes that I didn't do this. What about McKeel? No, I won't do that. That means everything to him. He will not. Again, counsel, this was all known to the jury here. I mean, I mentioned this earlier in the earlier questioning. But I don't think we as an appellate panel can lose sight of that either. I agree, Judge. It was put before the jury. Perhaps it could have been more effectively put before the jury. But all I'm saying is, when you look at all of it, there's no way as a matter of law it is proof beyond a reasonable doubt. It's just not possible to believe his testimony when you look at it as a whole. And when you look at the other things that happened in this case, it becomes clear how the jury reached the decision that they did. The passion of the jury was in the flame throughout the case. Throughout the case, the state's commenting that the defense is trying to hide evidence from the jury. Over and over again, they're told to stop. They don't. They get up in closing arguments. They argue that snitches get stitches. They know that McKeel's never heard a fly in his life, that he's never been in trouble, that he was out on bond working a full-time job and graduating high school. They knew that. They had that paperwork. And they get up, and they tell the jury that he's a dangerous person. Not just dangerous in general, not dangerous because he's charged with a murder, dangerous because the witnesses in the case are scared of him. And that's why they have no evidence. They do that to explain away their lack of evidence. They do that after playing a video that shows the victim's mother, as I've already described. I don't want to waste my time describing it. The video was awful. It was a shocking video. I can't even find a case that talks about anything like it because it's never happened before. No one's ever thought to play a video of the victim's mother laying in the fetal position in a parking lot, screaming to Jesus to bring her son back to life. I can't imagine what that feels like for her to sit in the courtroom and watch that play, let alone the jurors who are sitting there trying to decide whether the facts prove McKeel guilty. They can't do that after that video is played. On top of that, they're told we're trying to hide evidence from them throughout the entire case, and then in closing that there'd be more evidence if snitches didn't get stitches, or if snitches and we don't know, we know what happens to snitches, like that's some sort of veiled thing, like they didn't actually say that. Now, the state said it's not like Mullen, because in Mullen, excuse me, the witness said something different, but it's the same point. The witness is being threatened to not say something by the defendant. In that case, they actually had evidence that it was true. Here, they just lied. They made it up entirely to tell the story to a jury that just was completely not true. Corroboration, your honors, I'm running out of time. They talk about corroborated and key part. No one corroborated anything Talia said about him shooting Terrence. The only corroboration is that Talia's inside. They got it through an improper rehabilitation of their witness. It was ridiculous. Nothing he said that mattered was corroborated at all. These guys didn't see anything. According to them, they were standing two feet away from what happened and didn't see a thing. They didn't see Josiah and the other people who didn't even testify. They didn't see anything. They didn't corroborate anything. Not a lick of information about what matters here was corroborated at all. His presence unseen, that's it. And that is not enough. Him backing into a parking spot, that is not enough. There's nothing here. When you look at the evidence and you take it against all of the other information that came into this trial, that's just so clearly illegal, just so plainly illegal, and so plainly done on purpose. Thank you, counsel. Thank you, counsel. You are out of time. We'll let you go a little over to finish the point. The court will now stand in recess as we take this matter under advisement. Thank you both.